# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5334 | **DATE** | September 9, 2010 |
| **CASE TITLE** | *Berg, et al. v. Teamsters, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated herein, the plaintiffs' motion for a temporary restraining order is granted [5-1]. The defendants are ordered to postpone the nominations meeting currently scheduled for September 13, 2010, for 14 days from the date of this order, or until September 23, 2010. The temporary restraining order shall expire at 4 p.m. on September 23, 2010, unless it is extended or the defendants consent to an extension. A preliminary injunction hearing is set for Tuesday, September 14, 2010, at 1 p.m.

■[ For further details see text below.]

00:00

## STATEMENT

The instant dispute stems from power struggles by opposing groups within Teamsters Local 743 ("Local 743"). The plaintiffs, two of whom are suspended members of Local 743, and one who is currently a member in good standing, brought suit against Teamsters Joint Council 25 and International Brotherhood of Teamsters ("IBT"), alleging that they were improperly suspended from membership and removed as officers of Local 743. The plaintiffs seek temporary and injunctive relief in the form of an order reinstating two of the plaintiffs, Richard Berg and Eugenia Alvarez, to membership and office.

Due to the time constraints given the timing of the plaintiffs' filing, the instant order addresses only the request for a temporary restraining order. For the reasons stated herein, the motion for a temporary restraining order is granted. The defendants are ordered to postpone the nominations meeting currently scheduled for September 13, 2010 for 14 days from the date of this order, or until September 23, 2010. Hearing on the motion for preliminary injunction is set for Tuesday, September 14, 2010, at 1 p.m. The court will rule as expeditiously as possible after the hearing.

A.     **Facts**

Plaintiffs Berg and Alvarez were members of Local 743 in Chicago until they were removed from office, as president and secretary-treasurer, respectively, and suspended from membership in May 2010. The third plaintiff, Melanie Cloghessy, is a rank and file member in good standing of Local 743 who voted for Berg and Alvarez and also seeks their reinstatement to membership and office. Defendant Teamsters Joint Council 25 is a subordinate body of IBT, is headquartered in Park Ridge, Illinois, and is a "labor organization" within the meaning of 29 U.S.C. § 402(i). Local 743 is headquartered in Chicago and represents employees of nursing homes and hospitals as well as warehouses and manufacturing plants. Its

reported membership in 2009 exceeded 10,000.

Berg was a frequent critic of Local 743, Joint Council 25 and the Hoffa administration. He and Alvarez became the Chicago leaders of Teamsters for a Democratic Union ("TDU"), which "is a reform caucus of rank-and-file Teamster members." Complaint at ¶ 11. Berg opposed Local 743's incumbent administration in union elections in 1998, 2001, 2004, and 2007. Running under the New Leadership slate, Berg and Alvarez won the Local 743's 2007 election, which was supervised by the Department of Labor due to fraud in an earlier election.

In August 2009, a majority of Local 743's executive board filed internal union charges against Berg and Alvarez. The plaintiffs believe these charges were unfounded and politically motivated. One of the charges, against both Berg and Alvarez, was that they made an unauthorized severance payment to a union employee who had been terminated. A hearing was held before the Joint Council on two days in September and October 2009, and in January 2010, the Council issued a decision finding Berg and Alvarez guilty of entering into the severance agreement without board approval and signing the severance check knowing that it had not been board-approved. Berg asserts that he had the authority to enter into the severance agreement, and that he informed Local 743's board of the payment and the agreement but that the board did not object or overrule his decision. Berg was also found guilty of "incorrectly interpreting the Local Union's Bylaws in a way that prohibited newly hired Business Agents on withdrawal cards to immediately deposit their withdrawal cards and convert back to active membership." Complaint at ¶ 98. As to this charge, the Joint Council found that he violated the IBT constitution, but Berg alleges that he was never charged with violating the IBT constitution.

The Joint Council ordered Berg and Alvarez to be immediately removed from office and all compensated union employment for a period of three years. Berg also was suspended from union membership for five years while Alvarez was suspended from membership for three years.
On appeal, the General Executive Board ("GEB") issued a decision on May 10, 2010, voiding the Joint Council's decision regarding the charges against Berg as to the withdrawal cards of business agents. It affirmed the ruling on the severance agreement but reduced Berg's removal from membership and office to a period of two years. As to Alvarez, the GEB reduced her suspension from membership and office to one year. The plaintiffs allege that "[u]nder the IBT constitution, a Teamster suspended for a single day is ineligible to run for union office until he or she has re-established continuous membership in good standing for a period of two years." Complaint at ¶ 163. Thus, according to the plaintiffs, due to the terms of local union office, they are effectively disqualified from holding local union office for the next two terms or six years. Complaint at ¶¶ 121, 124. Berg and Alvarez continue to be actively involved in TDU, a group to which Joint Council 25 "has openly expressed intense political hostility." Complaint at ¶ 153.

The plaintiffs allege that injunctive relief is necessary in order to restore Berg and Alvarez to membership and office prior to the September 13, 2010, nominations meeting for the next election. They move under the Labor-Management Reporting Disclosure Act of 1959, 29 U.S.C. §§ 401 *et seq*, ("LMRDA") for a temporary restraining order and preliminary injunction.

The plaintiffs have alleged the following counts: Count I--Retaliation for Political Opposition in violation of the LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2); Count II–Violation of Equal Voting Rights under LMRDA § 101(a)(1), 29 U.S.C. § 411(a)(1); Count III–Due Process violations; Count IV[1]–Retaliation for Exercising LMRDA Rights in violation of LMRDA § 609, 29 U.S.C. § 529; Count V–Breach of Union Constitution; and Count VI–Breach of the Local Union Bylaws. Although not entirely clear, it appears that the plaintiffs are moving for injunctive relief as to Counts I, II, and IV.

**B.** **Analysis**

    A.    <u>Injunctive Relief</u>

As noted by the Seventh Circuit, "[t]o justify a preliminary injunction, the plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without the injunction, that the harm they would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and that the injunction is in the public interest." *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citations omitted). "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Id.* (citation omitted).

    B.    <u>Counts I (LMRDA § 101(a)(2)) and II (LMRDA § 101(a)(1)</u>

"One of the principal purposes of the LMRDA is to 'afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations.'" *Reich v. Local 399, Intern. Broth. of Elec. Workers, AFL-CIO, CLC*, 3 F.3d 184, 189 (7th Cir. 1993)(*citing* 29 U.S.C. § 401(b)). The Supreme Court has described the history of the LMRDA as follows:

> The Labor-Management Reporting and Disclosure Act of 1959 was the product of congressional concern with widespread abuses of power by union leadership. The relevant provisions of the Act had a history tracing back more than two decades in the evolution of the statutes relating to labor unions. Tensions between union leaders and the rank-and-file members and allegations of union wrongdoing led to extended congressional inquiry. As originally introduced, the legislation focused on disclosure requirements and the regulation of union trusteeships and elections. However, various amendments were adopted, all aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution; not surprisingly, these amendments-ultimately enacted as Title I of the Act, 29 U.S.C. §§ 411-415-were introduced under the title of "Bill of Rights of Members of Labor Organizations." The amendments placed emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean loss of union membership and in turn loss of livelihood. Such protection was necessary to further the Act's primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships. See 105 Cong. Rec. 6471-6472, 6476, 15530 (1959), 2 Leg. Hist. 1098-1099, 1103, 1566.

*Finnegan v. Leu*, 456 U.S. 431, 436 (1982)(footnote omitted).

"[T]he core purpose of § 101(a)(2) is to protect free speech and assembly rights because these are considered "vital to the independence of the membership and the effective and fair operation of the union as the representative." *Reed v. United Transp. Union*, 488 U.S. 319, 325 (1989). Specifically, § 101(a)(2) states that:

> (2) Freedom of speech and assembly
>
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings

of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Further, § 102 provides in relevant part that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

Prior to addressing whether the plaintiffs have met their burden of establishing the need for a temporary restraining order, the court addresses its jurisdiction. The defendants contend that the plaintiffs cannot proceed in this court and instead must file a complaint with the Secretary of Labor. It is true that "[u]nder Title IV, the union member's remedy for Title IV violations, following exhaustion of intraunion remedies, is to file a complaint with the Secretary of Labor." *Terranova v. Sheet Metal Workers Intern. Ass'n*, 09 C 3027, 2009 WL 1578974, at *6 (N.D. Ill. Jun. 4, 2009). Indeed, this remedy is exclusive. 29 U.S.C. § 483.

However, "[t]itle IV of the LMRDA specifically regulates the conduct of elections for union officers, and therefore protects many of the same rights as does Title I." *Local No. 82, Furn. & Piano Moving v. Crowley*, 467 U.S. 526, 539 (1984)(citations omitted). Thus, "when union members' rights of free speech and of association, as opposed to rights of voting and elections, are invaded by union officials, the requirement of initial appeal to the Secretary of Labor is inapplicable." *Terranova,* 09 C 3027, 2009 WL 1578974, at *6 (*citing Schonfeld v. Penza*, 477 F.2d 899 (2d Cir. 1973)). *See also Driscoll v. Int'l Union of Operating Engineers*, 484 F.2d 682, 687 (7th Cir. 1973)("The competing values between Title I rights and Title IV procedural requirements are best reconciled, in our opinion, by limiting initial federal court intervention to cases where union action abridging both Title I and Title IV can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union.").

Based on the current record and as noted below, the court concludes that the plaintiffs have sufficiently alleged a Title I violation such that a complaint filed with the Secretary of Labor is not their exclusive remedy.

Nor do concerns exist about the court interfering in an ongoing union election. The Supreme Court stated in *Crowley* that "appropriate relief under Title I may be awarded by a court while an election is being conducted. Individual union members may properly allege violations of Title I that are easily remediable under that Title without substantially delaying or invalidating an ongoing election." *Crowley*, 467 U.S. at 546. Here, the plaintiffs seek to briefly postpone the September 13, 2010, nominations meeting. A short postponement should not delay the mailing of ballots, which, according to the plaintiffs is not scheduled to occur until November 1, 2010. Accordingly, the court finds that it has jurisdiction to address the plaintiffs' claims under Title I of the LMRDA.

    1.    *Likelihood of success on the merits*

"To establish retaliation in violation of Title I, [the plaintiffs] must demonstrate that: (1) their conduct was an exercise of free speech as defined and protected by Title I of the LMRDA; (2) the defendants took actions against them in substantial part because of this exercise of Title I rights; and (3) they were damaged and suffered an injury as a proximate result of the defendants' actions." *Kauffman v. International Broth. of Elec. Workers, Local Union No. 461*, 124 F. Supp.2d 1127, 1131 (N.D. Ill. 2000)(citation omitted).

Here, the plaintiffs have set forth detailed allegations that the incumbent union administration historically has been hostile to the plaintiffs as members of the "reform caucus" TDU group. The plaintiffs allege that, as members of the TDU, they have openly criticized the current administration for its purported "ties to organized crime, weak collective bargaining agreements, excessive salaries, and general failure to represent the membership well and vigorously, or, sometimes, at all." Complaint at ¶ 10. The plaintiffs further allege that in order to prevent them from continuing to hold office and run for office in the future, Joint Council 25 made false and unsubstantiated charges against them and imposed discipline excluding them from membership and office for a period of several years.

The defendants contest these allegations. At this stage of the proceedings, the court finds that the plaintiffs have established a sufficient likelihood of success on the merits.

2. *Irreparable harm*

The plaintiffs have also demonstrated that they will suffer irreparable harm if the nominations meeting is not temporarily postponed so that the court can conduct a preliminary injunction hearing. Specifically, as detailed above, they are not allowed to be nominated for office at the upcoming nominations meeting to be held on September 13, 2010, given their removal from office and the suspension of their memberships. If the nominations proceed without the plaintiffs' participation and if they succeed on their claims, then they would be forced to attempt to undo the nominations process after the fact. It is not clear from the record whether such a "do-over" is even possible, and if so, how time-consuming and costly such a procedure might be. Nevertheless, given that the court is in the position to postpone the nominations meeting and avoid the complex questions associated with redoing the nominations, it makes sense to maintain the status quo for a short period of time. The court concludes that the plaintiffs have shown sufficient irreparable harm to impose emergency injunctive relief until a more detailed record can be established at a hearing.

The court is not persuaded differently by the defendants' assertion that the plaintiffs cannot demonstrate irreparable harm because they waited too long to seek relief. The plaintiffs indicate that they needed time to gather the evidentiary support for their claim. While the current time frame is not ideal, this justification is sufficient to impose the temporary relief sought since the election is not imminent.

3. *Balance of harms and the public interest*

The court further concludes that the balance of harms and the public interest weigh in favor of granting emergency relief. The record reveals no harms that might result from a short postponement of the nominations hearing. According to the plaintiffs, the actual ballots will not be mailed until November 1, 2010. In addition, the defendants expressly acknowledge that the public interest is served by having a full evidentiary hearing on the issue. Response at 15. The court agrees and thus, grants the plaintiffs' motion for a temporary restraining order. The defendants are ordered to postpone the nominations meeting currently scheduled for September 13, 2010, for 14 days from the date of this order, or until September 23, 2010. The temporary restraining order shall expire at 3 p.m. on September 23, 2010, unless it is extended or the

|  STATEMENT  |
|---|

defendants consent to an extension.

**C.     Bond**

Rule 65(c) provides that, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "[T]he case law has somewhat weakened the force of the 'no order shall issue' language" in Rule 65(c).  *Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980) (*citing Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 700 (7th Cir. 1977) ("Under appropriate circumstances bond may be excused, notwithstanding the literal language of Rule 65(c)"); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (the district court retains discretion to determine if a bond must be posted despite the mandatory language in Rule 65(c)).

In the instant case, the plaintiffs contend that they need not post a bond and the defendants do not address the bond issue.  Having considered the facts and circumstances of this case, the court declines in its discretion to require the plaintiffs to post a bond for the temporary restraining order.  The record does not indicate that the defendants will suffer any monetary damages due to the brief delay in the nominations meeting.

RH/p

1. Count IV is incorrectly identified as Count V in the complaint.  The court will refer to this count as Count IV.